IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ARTHUR CONNOLLY, JR., *and* TAMMIE CONNOLLY,<br><br>         Plaintiffs,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>         Defendant. | CIVIL ACTION NO. 2:25-cv-13781-RMG |

## COMPLAINT

COME NOW, Plaintiffs ARTHUR CONNOLLY, JR., and TAMMIE CONNOLLY, by and through their undersigned counsel, for their Complaint against Defendant UNITED STATES OF AMERICA (USA), and hereby respectfully allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Arthur Connolly is a citizen of and domiciled in the state of South Carolina. At all times relevant herein, Mr. Connolly was and remains the legal spouse and husband of Plaintiff Tammie Connolly. Mr. Connolly is an honorably discharged veteran of the United States Marine Corps and was entitled to care and treatment at the Ralph H. Johnson Department of Veterans Affairs Medical Center (VAMC) in Charleston, South Carolina, and other VA-affiliated centers.

2.

Plaintiff Tammie Connolly is a citizen of and domiciled in the state of South Carolina. At all times relevant herein, Tammie Connolly was and remains the legal spouse and wife of Plaintiff Arthur Connolly.

1

3.

Defendant United States of America (USA) is a sovereign government, which may be served with process in this action pursuant to Federal Rule of Civil Procedure 4(i), *inter alia*, by delivering a copy of the summons and complaint to the United States Attorney for the District of South Carolina and by sending a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States, addressed to Attorney General of the United States, Department of Justice, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530-0001.

4.

At all times relevant to this action, the agents, servants, employees, and personnel of the United States and its departments, agencies, employees, and/or agents, including all providers and staff at the VAMC, were acting within the course and scope of their relationship with the VA while providing medical care and treatment to Plaintiff Arthur Connolly. Unless otherwise stated, the medical care described herein was provided to Mr. Conolly at the VAMC and/or its affiliated clinics and the acts or omissions of any provider of medical care are attributable by law to Defendant USA.

**JURISDICTION**

5.

This action arises under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, *et seq*. This Court has subject matter jurisdiction over this action, *inter alia*, under the FTCA pursuant to 28 U.S.C. § 1346(b)(1).

6.

Pursuant to the FTCA, 28 U.S.C. § 2675, Plaintiffs submitted separate administrative claims with the United States Department of Veteran Affairs (VA), attached as **Exhibit A**

2

(Arthur Connolly) and **Exhibit B** (Tammie Connolly). Said claims were received by the VA on August 26, 2024, confirmed through correspondence with the VA Office of General Counsel, Tort Law Group (02), attached hereto as **Exhibit C**.

7.

More than six months have elapsed since the VA received Plaintiffs' claims and the VA has failed to make a final disposition as of the date of initiating this action. Pursuant to 28 U.S.C. § 2675(a), VA's failure to respond is a final denial of Plaintiffs' claim solely for purposes of 28 U.S.C. § 2675(b), without prejudice to Plaintiffs' right to otherwise assert that VA has not denied or otherwise disposed of their claims. Accordingly, Plaintiffs have fully complied with the FTCA's administrative procedures and Plaintiffs' claims are ripe for adjudication by this Court pursuant to § 2675(a).

8.

Pursuant to *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021), Plaintiffs are not required to comply with state-law pleading requirements, including, *inter alia*, S.C. Code § 15-36-100; however, out of an abundance of caution Plaintiffs hereby file contemporaneously with their complaint the affidavits of one or more expert witnesses specifying one or more negligent acts or omissions and the factual bases for each claim based on evidence available at the time of the filing of said affidavits. *See* Affidavit of Dr. W. Paul Murphy, M.D. (attached hereto as **Exhibit D**); and Nurse Maria Casement, RN (attached hereto as **Exhibit E**).

## **VENUE**

9.

Venue is proper in the United States District Court for the District of South Carolina, Charleston Division, pursuant to 28 U.S.C. § 1402(b) and Local Rule 3.01. The acts or omissions

complained of herein occurred at the VAMC located at 109 Bee St, Charleston, South Carolina 29401. At all relevant times, Defendant United States owned, operated, or controlled the VAMC and all providers, employees, and staff whose acts or omissions form a basis of Plaintiffs' claims.

## FACTUAL ALLEGATIONS

10.

In February 2024, at 59 years old, Mr. Connolly was diagnosed with prostate cancer.

11.

On or about June 13, 2024, Mr. Connolly was scheduled to undergo a Robotic-Assisted Laparoscopic Prostatectomy to surgically remove a malignancy at the VAMC.

12.

Mr. Connolly was advised that the surgery was anticipated to last 2.5 to 4 hours, with an overnight hospital stay.

13.

At some time prior to surgery and anesthesia beginning, an unidentified VA medical provider placed an intravenous line on Mr. Connolly's left arm, but failed to document its location, position, or whether it was adequately and properly functioning.

14.

Mr. Connolly received general anesthesia under the direction of VA provider Dr. Donald S. Kilpatrick.

15.

The surgery was performed by VA providers, Dr. Paul R. Womble and Resident Dr. Christopher W. Ritchie, and a Dr. Yankelevich, along with attending nurses and staff identified in VA medical records.

16.

The surgery lasted approximately 8-9 hours—nearly double the outside estimate for the surgery's duration.

17.

No VA provider performed or documented the performance of an assessment of Mr. Connolly for proper positioning and/or tucking of his upper extremities or placement and/or functioning of his blood pressure monitor or IVs prior to or during the procedure.

18.

A little less than an hour into surgery, Mr. Connolly's Non-invasive Blood Pressure cuff (NIBP) was not reading "due to tucked arm"; yet, prior to tucking, Mr. Connolly's NIBP was reading and correlating with the blood pressure readings obtained from an invasive line. This evidenced a likelihood of low or no circulation in Mr. Connolly's arm, which created a substantial risk of injury, including compartment syndrome.

19.

Despite clear evidence that Mr. Connolly's positioning or another complication was inhibiting the circulation to the left arm, no provider investigated or intervened to ensure that Mr. Connolly had adequate circulation or otherwise acted to ensure his positioning was safe while undergoing the procedure. Providers continued to ignore this significant risk factor for injury throughout the course of the surgery, including when the procedure exceeded the anticipated duration due to complications, which only further increased the risk of injury to Mr. Connolly.

20.

Upon awaking from anesthesia, Mr. Connolly immediately experienced pain, swelling, and limited mobility and sensitivity in his left arm. He also reported weakness in his right arm and both

legs.

21.

On June 14, Mr. Connolly was diagnosed with compartment syndrome of the upper extremity and was scheduled for an emergent fasciotomy.

22.

Due to the surgical complications, Mr. Connolly had to remain hospitalized. For two weeks post-operation, Mr. Connolly underwent multiple follow-up procedures, including fasciotomies, wound VAC procedures, and skin grafts.

23.

On June 28, Mr. Connolly was discharged with follow-up care as his providers attempted to resolve or mitigate the damage from his injuries, all while his prognosis relating to the use of his arm dimmed.

24.

On or about July 1, 2024, Mr. Connolly went to Beaufort Memorial Hospital due to shortness of breath. His condition was significant for tachycardia and elevated troponin and BNP levels. A CT angiogram revealed a bilateral pulmonary embolism with right heart strain. He was treated with anticoagulants and underwent a thrombectomy. The pulmonary embolism was directly and proximately caused by the complications of his prostatectomy and/or resulting injuries of compartment syndrome and the treatments therefor.

25.

On July 2, 2024, Mr. Connolly was transferred back to the VAMC.

26.

Prior to the prostatectomy in which he developed compartment syndrome, Mr. Connolly was an active, healthy man. He was a former Marine. He maintained his own, successful carpentry business. He maintained his home on a large, peaceful property near Beaufort, South Carolina. He was involved in the lives of his children and grandchildren. He rode his motorcycle for fun—it was his favorite way to clear his mind.  He and his wife, Tammie, had plans to purchase a farm where they could grow old, tend to the land, and enjoy their retirement surrounded by nature, friends, and family. But after losing the use of his arm, he can no longer interact with his children and grandchildren the same way; he can no longer continue in his profession as a carpenter; he can no longer ride his motorcycle *at all*; he cannot enjoy and maintain his own home and property, much less achieve the dreams of purchasing a larger farm for his family. Instead, he is confined primarily to his home, fears going out both because of the effort required and because of how he views himself after his injuries.

27.

Plaintiff Tammie Connolly, as Mr. Connolly's spouse, has served as Mr. Connolly's primary caretaker following his surgery. Due to Mr. Connolly's injuries and resulting permanent disabilities, she spends a significant portion of her time assisting him with the activities of daily living, including among others dressing, feeding, bathing, homemaking, and providing other care for Mr. Connolly. Additionally, Mrs. Connolly has had to take upon a significant additional burden in the management and maintenance of the Connolly's property, home life, and business. Mrs. Connolly has lost significant companionship and intimacy with her husband, as well as her own time that she must now devote to the care of her husband, home, and business. These are

only some, but not all, of the innumerable losses she suffered due to Mr. Connolly's injuries and permanent disability following the negligent surgery at the VAMC.

## COUNT 1
## NEGLIGENCE

28.

Plaintiff incorporates all foregoing and following allegations as if fully set forth herein.

29.

Defendant, by and through its departments, agencies, corporations or other artificial entities or persons, employees, agents, or other persons acting within the course and scope of their legal relationship, express or implied, with Defendant is subject to liability in tort in the same manner and to the same extent as a private individual under like circumstances under the laws of the State of South Carolina, as the place where the alleged acts or omissions occurred, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674.

30.

One or more of Defendant's departments, agencies, corporations or other artificial entities or persons, employees, agents, or other persons acting within the course and scope of their legal relationship, express or implied, with Defendant, including the VAMC and all VA medical providers referenced herein, established a doctor- or medical provider-patient relationship with Plaintiff Arthur Connolly at all times relevant to this action and, consistent therewith, undertook the duty to render medical care to Plaintiff Arthur Connolly in accordance with the prevailing professional standards of care exercised by competent providers in the same branch of medicine under similar circumstances, including, *inter alia*, surgical, anesthesiology, urology, and nursing practice.

31.

At all times relevant herein, the physicians, providers, staff, and other VAMC personnel referenced herein were employees, agents, or other persons acting within the course and scope of their legal relationship, express or implied, with the United States and/or the VAMC and its affiliates.

32.

One or more of Defendant's departments, agencies, corporations or other artificial entities or persons, employees, agents, or other persons acting within the course and scope of their legal relationship, express or implied, with Defendant, including the VAMC and all VA medical providers alleged herein deviated from the prevailing standard of care while acting within the course and scope of their employment or other legal relationship with the United States as alleged herein and further set forth in the attached affidavits, incorporated by reference as if fully set forth verbatim herein. *See* Exhibits **D–E**.

33.

While Mr. Connolly was under the care of one or more of VAMC's agent/employee medical providers, including, *inter alia*, Dr. Donald S. Kilpatrick and Dr. Tamas Szabo, attending anesthesia physicians, and attending surgeons, Dr. Paul Womble, Dr. Christopher Ritchie, one or more of said providers deviated from the standard of care for physicians under like and similar circumstances in the practice of medicine in their respective specialties. Among other acts or omissions, said physician-providers failed to ensure proper positioning, placement, and function of Mr. Connolly's IV prior to and during the procedure; failed to ensure proper positioning and placement of Mr. Connolly while under general anesthesia; failed to monitor and assess Mr. Connolly's vital signs and/or IV sites during surgery; failed to respond to signs of

poor or no circulation and attendant risks of injury to Mr. Connolly; and failed to ensure that subordinate anesthesiology providers and other staff under their supervision and direction did the same. Collectively, or individually, these acts or omissions constitute at least one breach of the standard of care applicable to physicians under similar circumstances to those in which they were treating Mr. Connolly as their patient.

34.

Collectively, or individually, said physician-providers' breach of the applicable standard of care was the direct cause of Mr. Connolly's injuries. Further, Mr. Connolly's injuries were each and all the foreseeable consequence of the negligence and breach of the standard of care by the physician-providers.

35.

The physician-providers' breach of the prevailing standard of care, which violations were the direct and proximate cause of Mr. Connolly's injuries, are further supported by the Affidavit of W. Paul Murphy, M.D., **Exhibit D**, filed contemporaneously herewith and which is fully incorporated as if set forth in full and verbatim herein.

36.

While Mr. Connolly was under the care of one or more of VAMC's agent/employee nursing providers, including, *inter alia*, Emily Chantell Wright, CRNA, Nurse FNU Wiliams, and Nurse Tamara Stanton, one or more of said providers also and independently breached the standard of care for nursing staff and non-physician providers under similar circumstances. Among other acts or omissions, said providers failed to ensure proper positioning and placement of Mr. Connolly's IV site prior to and during the procedure; failed to ensure proper position and placement of Mr. Connolly while under general anesthesia; failed to monitor and assess Mr.

Connolly's vital signs and/or IV site during surgery; and failed to advocate for Mr. Connolly's safety and welfare, or failed otherwise to intervene when they knew, or reasonably should have known, of an increased risk of injury to Mr. Connolly due to possible poor or lost circulation in his arm. Collectively, or individually, these acts or omissions constitute at least one breach of the standard of care by the staff providers at the VAMC with respect to his care of Mr. Connolly as their patient.

37.

Collectively, or individually, VAMC staff providers' breach of the applicable standard of care was the direct cause of Mr. Connolly's injuries. Further, Mr. Connolly's injuries were each and all the foreseeable consequence of the staff providers' negligence and breach of the standard of care.

38.

VAMC staff providers' violation of the prevailing standard of care, and the cause of Mr. Connolly's injuries, are further set forth in the Affidavit of Maria Casement, RN, attached hereto as **Exhibit E**, as well as Affidavit of Dr. Murphy, **Exhibit D**, each of which is filed contemporaneously herewith and fully incorporated as if set forth in full and verbatim herein.

39.

Defendant United States of America is liable for the negligence of its employees/agents, including, *inter alia*, the physician and staff providers referenced herein, through the doctrine of *respondeat superior* and vicarious liability, as well as the United States' statutory waiver and acceptance of liability for the acts and omissions of federal personnel, including all VAMC providers whose acts or omissions are referenced herein, acting within the course and scope of their legal relationship with the VAMC pursuant to the FTCA, 28 U.S.C. § 2671, *et seq.*

40.

One or more of the deviations from the standard of care as alleged herein were the direct and proximate cause of Plaintiffs' damages.

**COUNT 2**
**LOSS OF CONSORTIUM**

41.

Plaintiff incorporates all foregoing and following allegations as if fully set forth herein.

42.

Plaintiff Tammie Connolly ("Mrs. Connolly") was at the time of the injuries to Mr. Connolly alleged herein, and remains, the lawful spouse and wife of Mr. Connolly.

43.

Defendant, by and through its departments, agencies, corporations or other artificial entities or persons, employees, agents, or other persons acting within the course and scope of their legal relationship, express or implied, with Defendant, caused injuries to Mr. Connolly as alleged herein.

44.

One or more of the tortious deviations from the standard of care in the treatment of Mr. Connolly by Defendant, as alleged herein, was the direct and proximate cause of a loss of consortium injury to Plaintiff Tammie Connolly, including, *inter alia*, her loss of affection, intimacy, comfort, society, and support from Mr. Connolly as a result of his injuries.

**AFFIDAVIT(S) OF MERIT PURSUANT TO SOUTH CAROLINA CODE § 15-36-100**

45.

Plaintiff incorporates all foregoing and following allegations as if fully set forth herein.

46.

Pursuant to S.C. Code § 15-36-100, the affidavit of W. Paul Murphy, MD, Attending Anesthesiologist, Dogwood Anesthesia/HCA Physicians Services, in Richmond, Virginia, is attached hereto as **Exhibit D** and incorporated herein by reference. The affidavit of Dr. Murphy sets forth at least one negligent act or omission concerning the medical care and treatment of Plaintiff Arthur Connolly, Jr., by Defendant United States of America. Said affidavit may not be inclusive of each negligent act or omission concerning the treatment of Plaintiff Arthur Connolly, Jr., by Defendant and Plaintiffs reserve the right to contend and prove additional and/or different negligent acts, errors, and omissions.  Said affidavit fulfills the requirements of S.C. Code § 15-36-100.

47.

Pursuant to S.C. Code § 15-36-100, the affidavit of Maria Casement, RN, operating room nurse at Northside Forsyth Surgery Centers, Cumming, Georgia, is attached hereto as **Exhibit E** and incorporated herein by reference. The affidavit of Ms. Casement sets forth at least one negligent act or omission concerning the medical care and treatment of Plaintiff Arthur Connolly, Jr., by Defendant United States of America. Said affidavit may not be inclusive of each negligent act or omission concerning the treatment of Arthur Connolly, Jr., by Defendant and Plaintiffs reserve the right to contend and prove additional and/or different negligent acts, errors, and omissions.  Said affidavit fulfills the requirements of S.C. Code § 15-36-100.

## CAUSATION

48.

Plaintiff incorporates all foregoing and following allegations as if fully set forth herein.

49.

But for Defendant United States of America's negligence and/or breach(es) of the applicable standard of care, imputably or directly, including as alleged in the attached affidavits, **Exs. D–E**, Mr. Connolly would have been properly and timely treated to avoid the development or worsening of his compartment syndrome and resulting and related injuries and permanent disabilities. Further, Mrs. Connolly would not have had to undertake the additional burden of Mr. Connolly's care, the care of Plaintiffs' home and business, or lost the affection, intimacy, comfort, society, and support from Mr. Connolly resulting from his injuries. Defendant United States of America's negligence and breach of the standard of care directly and foreseeably caused Plaintiffs' injuries as set forth herein.

## DAMAGES

50.

Plaintiff incorporates all foregoing and following allegations as if fully set forth herein.

51.

As a direct and foreseeable result of Defendant United States of America's negligence, Plaintiffs suffered general and special damages.

52.

Plaintiff Arthur Connolly suffered a severe and permanent physical injury, namely compartment syndrome and attending complications, resulting in the total loss of use of his left arm. Mr. Connolly is unable to fully care for himself, to dress himself, to feed himself, to maintain his home, to continue in his livelihood, among numerous other losses, tangible and intangible. Mr. Connolly has suffered severe emotional, physical, and emotional pain and suffering as a result of his losses. He has lost his independence, his ability to care for and enjoy

time with his family, his companionship and intimacy with his spouse, his earning capacity and ability to make a living and to pursue both work and hobbies. Mr. Connolly's injuries are more likely than not permanent and, thus, his losses will continue for the remainder of his life.

53.

Mr. Connolly suffered special damages in the form of past and future medical expenses as well as past and future lost wages in an amount to be proved through discovery and, if required, expert testimony.

54.

Plaintiff Tammie Connolly suffered significant loss of consortium as a direct and foreseeable result of Defendant United States of America's negligence. Among other things, Mrs. Connolly now spends a significant portion of her time assisting Mr. Connolly with the activities of daily living, including dressing, feeding, bathing, homemaking, and providing other care for him. Additionally, Mrs. Connolly has had to take upon a significant additional burden in the management and maintenance of the Connolly's property, including their family home and business. Mrs. Connolly has lost significant companionship and intimacy with her husband, as well as her own time that she must now devote to the care of her husband, home, and business. These are only some, but not all, of the innumerable losses she suffered due to Mr. Connolly's injuries and permanent disability following the negligent surgery at the VAMC.

**WHEREFORE**, Plaintiff prays that:

    a)    Defendant be served with the Summons and Complaint in this action in accordance with the Federal Rules of Civil Procedure;

b)  Plaintiff Arthur Connolly be awarded all general and special damages available to him under applicable law for negligence and breach of the standard of care as determined by the enlightened conscience of an impartial trier of fact;

c)  Plaintiff Tammie Connolly be awarded all general and special damages available to her for loss of consortium resulting from Defendants' negligence and breach of the standard of care as determined by the enlightened conscience of an impartial trier of fact;

d)  Judgment be entered for Plaintiffs and against Defendant in the amount of $35,000,000, in addition to all applicable fees, costs, and interest allowable to Plaintiffs under law;

e)  A trial as provided by law, including by jury if allowed; and

f)  The Court order such other relief as the Court deems just and proper.

This 8th day of December, 2025.            Respectfully submitted,

/s/ Andrew Bowen
**BOWEN PAINTER LLC**

W. ANDREW BOWEN
South Carolina Bar No. 10510
STEPHEN D. MORRISON
*Pro Hac Vice Forthcoming*
800 Commercial Court
Savannah, GA 31406
Phone: 912-335-1909
Facsimile: 912-335-3537
Email: andrew@bowenpainter.com
         stephen@bowenpainter.com
*Attorneys for Plaintiffs*